Good morning, Your Honor. Carolyn Phillips. I'm appearing for the appellate petitioner, Mr. Vargas. When did you first ask for an evidentiary hearing on the question of whether the lawyer was asleep? I'm sorry? When did you first ask for an evidentiary hearing on the issue of whether the lawyer was asleep? My understanding, I'm only appellate counsel. In the district court level, Mr. Vargas was representing himself. And in response to the court's inquiry and its findings of facts and recommendations, Mr. Vargas submitted, I think, a declaration regarding that issue about Mr. Quick, his attorney, being asleep during the trial. There has not been, to my knowledge, in reviewing the record, any hearing about the lawyer. I'm asking, when was one first requested? I believe on appeal. On appeal. I'm sorry. In his petition, he requested an evidentiary hearing. In his habeas petition, correct? His habeas petition. Correct. He asked for an evidentiary hearing on that issue, or he just raised it to the court? I think he raised that issue. I don't know. Your answer is you don't know. That's what I'm hearing. I don't know if he did specifically ask for an evidentiary hearing. Isn't that important? Absolutely. But I also think it's important for the district court to know that the law, at this point, is that where there hasn't been any findings of fact by any court or any evidentiary issue on the question of whether or not this man's attorney was asleep. You're asking us to order an evidentiary hearing. Is that right? I'm sorry. You're asking us to order an evidentiary hearing. Is that right? I mean, I would think that you would start out by pointing out where one was requested in the district court in front of the magistrate or otherwise, and it was turned down. It's not clear to me that that has to be the trigger in order for a district court to take it upon itself to determine that the record runner is asleep. So are you conceding that he did not ask for an evidentiary hearing? Nobody asked for one? I believe he did. So now you're telling us he did not ask for an evidentiary hearing. If that's the case, why should we entertain the request for an evidentiary hearing? My understanding of the record runner is that the findings of fact and recommendation were submitted by the district court judge, that Mr. Vargas responded in his declaration, and as part of his petition, it indicates that these issues exist. I'm not aware that he specifically asked the court that he wants an evidentiary hearing on this particular issue. However, because the record was clear, and I don't think that's the case. Sui sponte, one should have been ordered. Is that what you're now arguing? I think when there's an issue raised as substantial as this issue, whether or not this man was deprived of counsel during his trial, I think, yes, I think the district court has to give the pro per. I'm following your argument now. What's your best case for the proposition that the district court had a sui sponte obligation to engage in evidentiary hearing? That's what I'm trying to explain, Your Honor. What I believe is this, that the facts were serious enough, that they needed to be explored, that they never were explored either at the superior court level with the first State petition which raised this issue. There's never been a decision about what the facts were. I understand that, but I'm asking, my question was, what's your best case that says that the court had a sui sponte obligation or a court has a sui sponte obligation to order an evidentiary hearing when one is not requested? Actually, Your Honor, I think it doesn't necessarily say that, but it's a case that you decided with Schell v. Witek, which says that an evidentiary hearing on a habeas corpus petition is required whenever a petitioner's allegations, if proved, would entitle him to relief. And no State court trier fact has, after full and fair hearing, reliably found the relevant facts. But that's taken out of context. In that case, an evidentiary hearing had been requested. Well, in this instance, it would seem to me, again... So this would be a new case. There's no other case that says... It's boggling the idea that an evidentiary hearing at points, it's inevitable that the court must look at the facts and the record of the case, determine that this man is representing himself, give broad leeway, I would assume, to the petitioner's statements of why, what the issues are before the court. You know, I would have thought, maybe I'm missing something here, but I would have thought you would have come in and said, well, the difficulty throughout the case has been focused on prejudice, and the question that we need to look at is, if you have these allegations of a falling-asleep lawyer, either prejudice is presumed or you don't need prejudice. Exactly. Well, not exactly, but I haven't even heard anything about that point. And, in fact, just to follow up on that question, I was hoping you could lay out where this case fits in the AEDPA framework, whether you're arguing that this is a D-1 case and that it's the decision of the State court was contrary to an unreasonable application of Supreme Court precedent, I presume Strickland, or whether this is a D-2 case and there was an unreasonable determination of the facts by the State court. Can you, in responding to Judge McKeon's question, could you put it in the AEDPA framework? It would be a D-1 case because there was never a determination of the facts regarding the issue of whether or not Mr. Vargas' counsel was asleep. But if it's a D-1 case, what we would have to say is either the State court was wrong in saying that there was no prejudice under Strickland, or we'd have to say the State court was wrong in deciding it didn't have to do an evidentiary hearing, that there's a Supreme Court precedent requiring it. So Judge Trott's case would not be enough. There would have to be a Supreme Court precedent requiring the State court to have an evidentiary hearing in this context. But I believe that even under Strickland that there is a presumption of prejudice where it's established that the defendant has not been represented by counsel. Well, but here you have one sentence where the person asks a – the attorney asks a logical – makes a logical objection showing that he had heard the prior statement, and that objection is sustained. So I was having trouble even seeing where there was any evidence that the attorney was sleeping at all. That's the only statement, and it comes in the context which suggests he's not sleeping. I believe further on in the record, and in that particular objection, it was raised, it was sustained, there is continued testimony giving in the same line, and there were no further objections made. But then later on in the testimony, or in the transcript, he raises a question based on some of the – it was like where – yeah, that took place during the examination of Officer Gonzalez. I'm trying – I'm looking at my notes for that. So – and he does make further objections in the – after the – his initial objection in Officer Gonzalez's testimony. I think what the Court needs to shift the view is this, that there's been an allegation that this man was sleeping. There is no record to indicate that he was not sleeping. There has been no finding of fact that he was not sleeping. There's been a determination made by the State court saying that there's no prejudice, but that's not the standard. Kagan. So are you saying that whenever a defendant, a habeas petitioner, alleges that his attorney was sleeping, then that's presumed – there's a per se rule that that's prejudicial, or that's presumed prejudicial?  Is there a Supreme Court case that says that? Because we're in IDPA land, so that's what you mean. My understanding in looking at Strickland is that you are entitled to be represented by counsel under the Sixth Amendment. If your counsel is not attendant during your trial – How about like for, you know, probably nobody in this room would raise their hand and swear that for five – there wasn't some time in some proceeding as a lawyer or judge or whatever, for five seconds, you know, that they nodded off. Right. Would that be enough? No. And I think what this is saying is that there's a substantial, substantial portion of the – I mean, he says that in his habeas petition. He says that his lawyer slept through a substantial and significant portion of his fellow Frank Gonzalez's testimony. And we have at least one place in the record where the lawyer says, oh, you know, I nodded off. And then we have another place in the record where the lawyer kind of admits that toward the end of the day he has little difficulty focusing. So we have those two things. And you're saying that with that, there at least should have been an evidentiary hearing. I think that with that, there's substantial – there's enough information then before the court that hasn't been refuted in any way by the Respondents that this attorney was not in fact asleep. So what would be, in your view, since the only allegation is that he slept through Mr. Gonzalez's testimony, what would be a substantial and significant portion of the trial? I mean, how much would that have to be? Do you know? Have you looked at Mr. Gonzalez's testimony to see how long it was? I don't believe there's a break line test. Have you looked at Mr. Gonzalez's testimony? How long was that? How many pages does that run? I don't know. I'd have to go back and count them. When was the last time you reviewed it? I read through the actual transcript again. I briefly went through it the other day, two days ago. And you don't remember how long the testimony was? I'm sorry. Do you know how it fared in relation to the other parts of the trial in terms of proportion or just in terms of relative length? The length of time that he was asleep? No. We don't know the length of time he was asleep. Where did Mr. Gonzalez's testimony fit into the trial? The police officer was the gang expert witness. My understanding from Mr. Vargas is that during that testimony that his counsel slept. The entire time? No, I don't believe he says the entire time. I mean, he does his objection on the transcript, 281, objection, I don't think we've heard that testimony. And then on the next page, 282, he makes another objection. Objection, Your Honor, unless those reports are deemed to be reliable. So really the only place where he didn't make objections was in this intro with Mr. Gonzalez talking about here's my background, here's how I know about gangs, here's how I've talked to them. And so there wasn't necessarily any reason to make objections to that generic sort of testimony. I just am having trouble seeing why the State court's decision that there wasn't sufficient evidence of sleeping wasn't reasonable or how it was inconsistent with any Supreme Court precedent or an unreasonable determination of the facts. What the State court, I believe, said is that there was no evidence that there was any prejudice if, in fact, he had been sleeping. There wasn't any finding that, in fact, he had not been sleeping, but there was no prejudice even if he had been sleeping. But our job is just to see whether what the State court did was a violation of Supreme Court precedent. Again, I believe in Districtland, if an attorney is not present and is not advocating for his client during substantial portions of the case, then it is if the attorney has no representation of counsel. Thank you. And then prejudice is presumed. Thank you. Paul O'Connor for Respondent. First on this issue of whether Petitioner requested an evidentiary hearing in the district court, you know, I am an officer of the court, and sometimes that means having to concede things that are not in the district court. That means you tell the truth. Did he make a request for an evidentiary hearing? He did. He did. I'm looking at the appellants' Well, we appreciate your candor. Thank you. Sometimes it's hard to find some of these things in the minutes. Yeah. Where did he do that? Sure. Just a second, Your Honor. This is in the appellants' excerpts of record, volume 2. Volume 2. Hold on. I'm looking at the first petition, the first amended Federal petition, which begins at page 168. And then I'm looking at the prayer for relief, which is at page 185 of the excerpts. Prayer for relief. And after the first Do you have a bait stamp on anything? Yeah. It's a bait stamp. It's bait stamp 185. 185? Yeah. Page 11 of his petition. Right. Prayer for relief. Prayer for relief. After the first paragraph, it says wherefore Conduct an evidentiary hearing. Yeah. Right. In second paragraph, conduct an evidentiary hearing to determine if sufficient evidence exists to support the contention of ineffective systems of counsel and if found to be sufficient, issue this order granting this witness. Did the court address that explicitly? That's what I couldn't find. I don't think so. I know in our answer we always say the court should deny an evidentiary hearing. We routinely say that in our answers. He alleges that there was a substantial time during a key witness that his lawyer was asleep. We don't know whether that's true or not. We know the lawyer admits some nodding off, but we don't know how much. Why wouldn't you just have an evidentiary hearing and one way or the other there would be enough evidence to even determine if this is worth going forward? Okay. Well, I think, first of all, you know, this court has said in the Taunton case that where the petitioner's claims can be resolved by reference to the state court record, then an evidentiary hearing should be denied. And this is a case where the claim can be resolved based on the state court record because the state court record shows that the attorney was paying attention and that there was no prejudice. Well, you're talking about the trial record. Right, the trial record. You know, the problem I have is you say it is not clear that this was an admission by counsel that he had been asleep. So it's not clear. And it may have been a joke, but it may not have been a joke. And when you say it may have been a joke, the whole point is we don't know. And isn't it – if you'll let me finish my question. And if it may have been a joke or it may not have been a joke, isn't that the quintessential essence of an evidentiary hearing to determine whether it was a joke or not? Right. But we do have an alternative argument, and this is our main argument, and that is that the case can be resolved based on the state court record because the record shows the attorney was paying attention and that there was no prejudice. Well, at some times he was paying attention, but you don't even concede that if it may have been a joke, it may not have been a joke. He may have been asleep. If the attorney comes in and says, you know what, I was asleep during part of that witness's testimony, isn't that then a serious case and we have to deal with that? Well, it is clear that he was awake during – He was awake on other parts of the case. I mean, it's clear that he was not sleeping during a substantial portion of the testimony. Well, how is that clear? Well, it's clear from the attorney's objections during the witness's testimony. It's clear from his cross-examination of the witness. His cross-examination shows familiarity with the witness. But the whole point is until we know exactly if that's possible, during what time period he was or was not asleep, how do we grapple with the basic issue? I mean, that's the predicate for everything, isn't it? Was he asleep or was he not? If he comes in and he says, you know, I was asleep, gee whiz, I kept falling asleep during that testimony, then I'd come back to life and I probably missed substantial parts of it, where are we? Well, I mean, if we just read the testimony and read the cross-examination, it's clear that the defense attorney was familiar with the direct – How could he have been familiar with parts that happened during the time that he was asleep? We don't know. Yeah, but it's just evident. I mean, he's making objections. His cross-examination shows familiarity with the direct testimony. I mean, it's just clear. So you're saying the record is so clear that we can conclude, under whatever approach that we have to take, that he wasn't asleep? Yes, yes, that he wasn't asleep or that certainly there was no prejudice. Well, we're looking at the, you know, the state court's decision. So what's the standard under AEDPA? I mean, what are we examining the state court's decision for? Okay, well, it has to be a reasonable application of U.S. Supreme Court authority, and we would submit that Strickland is the applicable case and that the petitioner does have the burden of showing prejudice. And I have a couple of points to make under that. I mean, there's the – So there's two additional – there's two questions, as I see it. One is the legal question, which is, was the state court's decision that there wasn't ineffective assistance of counsel under Strickland unreasonable or contrary to Strickland? Right. And the second question is, which I think Judge Trott is getting at, is did the state court err in some way that we have to correct on Hebe's review in not having an evidentiary hearing in this context, which is sort of a D2, 254-D2 issue. And you – can you address that second question? Sure. Well, as I said, petitioner's claims can be resolved based on the state court record. Are we looking at the state court – I mean, do we – do we – how do we evaluate what the state court did? So the state court obviously said it can be – I can resolve this on the record. I don't need an evidentiary hearing. When we look at the state court's decision and we say, well, was this an unreasonable determination of the facts, what's the standard of reviewing that decision on Hebe's? Well, it's just – I mean, it's just reasonableness. And I think there's one case that's helpful here, and that's the Peterson case from this court, the Ninth Circuit, from 1985, where the court concluded the attorney had not been sleeping during a substantial portion of the trial. Therefore, the Javor case was an opposite. The Javor case was the one that said that a sleeping attorney is equal to no attorney, and therefore, no prejudice has to be shown. Peterson said – But that's a – see, that goes back to a case that nobody really mentioned here, which is a Supreme Court case. Chronic really seems to me to be the case we need to be looking at. Now, we don't know if this case falls under chronic or not because we don't know if he was denied a lawyer in effect during a substantial period. But if he were, there would be no prejudice required under Supreme Court precedent, correct? Well, okay. I mean, that's – if the court believes that chronic is the correct standard, but we would submit that Strickland is the correct standard. Well, but – and I hate to beat this dead horse, but we can't know until we know what the factual predicate is. And you can't just say, well, it may have been a joke. I mean, that's almost a concession that there has to have been an evidentiary hearing because you concede, well, it may not have been a joke. He might have been asleep. Well, you know, Your Honor, I mean, that's just a fallback position. Our main argument is that the issue can be resolved based on the state court record. It's clear from the state court record, from the attorney's objections, from the attorney's cross-examination, that he was familiar with the witness's direct testimony. Yeah, you're asking us to make one inference after another in your brief. I'd sure like to have some facts, direct evidence, so we wouldn't have to make inferences about something as serious as the right to counsel. Well, but, I mean, I think that all you have to do is read the cross-examination and read the direct examination when the attorney was making objections. I did. But what difference does it make, though? I mean, he says I may have been asleep. I didn't hear some testimony. Well, we're plowing this ground over and over again. And also, let me just ask you, I don't think Cronic is inconsistent with Strickland. Not at all. In other words, they are complementary. Strickland is the overarching, as I see it. Maybe you can tell me if you have a different view. Strickland is an overarching principle of how we look at ineffective assistance of counsel cases. Cronic takes a particular kind of case where one might have been denied counsel at a critical stage, which could either be a sleeping lawyer or they didn't let the lawyer come in and they were back doing something. So do you see them as somehow two different standards or two different principles? Well, yes. Well, yes, two different standards. I mean, Strickland would be for evaluating the usual ineffective counsel claims, whereas Cronic would be for evaluating a total denial of counsel. And if you had a lawyer who was asleep for a substantial period of the trial, would that be, in effect, an actual denial during that period? You know, I mean, I think it would be reasonable to say that if the lawyer was asleep during virtually all of the trial or something like that, then, yeah, that would essentially be a denial. And then prejudice isn't on the table at all. Right. But, I mean, that's not this case. I mean, it's obvious. It may not be this case. You might be absolutely correct. Well, I mean. But we don't know. I mean, I think a reasonable reading of the record. Why do we have evidentiary hearings? Well, I mean, we don't have evidentiary hearings very often. Because your office is too overburdened to get affidavits from people, is what you tell us. Well, I mean, look, under AEDPA, the focus is the state court record. And whether the state court's determinations. The state court didn't really grapple with whether he was actually asleep or how long it was. State courts seem to say we can't find any prejudice. Right. Well, I mean. And that might not be right if it's a chronic case. Well, I think it's right. I mean, the state court was saying this is not a chronic case. This is a Strickland case. We find no prejudice under Strickland. Well, they didn't know. I mean, I understand that your office is overburdened. And there's a lot of ineffective assistance counsel claims. But there's not that many where you actually have something in the record about a sleeping lawyer, are there? Well. I mean, this is a pretty unusual case where you actually have a claim plus something in the record as opposed to somebody just saying, you know, I thought the guy was asleep at the switch most of the time of my trial. Well, I admit, you know, trial counsel's comment about being asleep was unusual. That is true. Later on he said he was fatigued, that he wasn't prepared to go forward. I mean. Right. There's a little bit more than just I was asleep. Right. But then, I mean, if you look at that argument, I mean, he made a reasonable effective argument. He made points on the defendant's behalf. I mean, it was not an incoherent argument. All right. Well, we'll all be going back to look at the transcript again. Thank both counsel for your arguments. The case of Vargas v. Plyler is submitted.
judges: Trott, McKeown, Ikuta